## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

SANDRA D. CONNELL,

       **Plaintiff,**

                                                         Civil Action 2:17-cv-82
                                                         Judge James L. Graham
       v.                                          Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Sandra D. Connell ("Plaintiff"), brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record (ECF No. 10). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.   BACKGROUND

Plaintiff protectively filed her applications for benefits on August 12, 2013, alleging that she has been disabled since July 16, 2013, due to problems with her back and knees, hypertension, depression, arthritis, hyperlymphoma, aneurism, and transient ischemic attacks. (ECF No. 10 at PAGEID ##334-36, 373.) On August 17, 2015, following initial administrative

denials of Plaintiff's applications, a video hearing was held before Administrative Law Judge William Spalo (the "ALJ"). (*Id*. at PAGEID ##122-62.)

At the hearing, Plaintiff, represented by counsel, appeared and testified. Plaintiff testified that she is unable to work because she has difficulty bending due to arthritis and bone shards in her knees and arthritis in her back. (*Id*. at PAGEID ##132-33.) Plaintiff also testified that she suffers from vertigo at least three-to-four times a day. (*Id*. at PAGEID ##133-34.) Plaintiff further testified that she experiences migraines and mood swings. (*Id*. at PAGEID ##135-36.) She said she experiences migraines "about every day," that they last two hours or more, and that she has to lay in a dark room for hours to get the migraines to go away. (*Id*. at PAGEID ##132-33.) She also said that the medication she takes at night does not prevent the headaches from occurring during the day. Plaintiff testified that her "severe mood swings" also limit her ability to work. (*Id*. at PAGEID ##136.) She added that her medications sometimes help her with her mood swings.

Plaintiff also testified that she is able to prepare meals such as lasagna. (*Id*. at PAGEID ##140-41.) She said that she is able to clean, sweep, and dust, but that "it takes [her] a little while to get around." (*Id*. at PAGEID #141.) She also said that she makes her bed and does laundry. Plaintiff indicated that she goes grocery shopping, but rides a scooter in the store. Plaintiff stated that she keeps in contact with others through her Facebook account on her phone. (*Id*. at PAGEID #142.) She also goes to dinner and movies with her boyfriend and kids, and she enjoys reading and going to her friends' homes to play cards. (*Id*. at PAGEID ##142-43.)

Vocational Expert Aimee Mowery (the "VE") also testified at the administrative hearing. (*Id*. at PAGEID ##156-60.) The VE classified Plaintiff's past relevant work as a certified

2

nurse's assistant as a semi-skilled, medium position, performed at the heavy level of exertion. (*Id.* at PAGEID #158.) The ALJ asked the VE to consider a hypothetical individual with Plaintiff's vocational profile and the residual functional capacity ("RFC")[1] the ALJ ultimately assessed. (*Id.* at PAGEID at ##158-59.) The VE testified such an individual could not perform Plaintiff's past work, but could perform other sedentary, unskilled jobs such as document preparer, with 3,000 jobs in the state and 98,000 jobs in the national economy; sorter, with 1,500 jobs in the state and 15,000 jobs in the national economy; and final assembler, with 1,700 jobs in the state and 28,000 jobs in the national economy. (*Id.*) The VE also testified that if the hypothetical individual were to miss two days of work per month, there would be no sedentary, unskilled jobs that she could perform. (*Id.* at PAGEID ##159-60.)

On October 23, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PAGEID ##104-16). The ALJ noted that Plaintiff meets the insured status requirements through December 31, 2017. (*Id.* at PAGEID #106). The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 16, 2013, the alleged onset date of her disability. (*Id.*)

The ALJ next determined that Plaintiff has the severe impairments of obesity, degenerative joint disease in both knees, obstructive sleep apnea, and generalized anxiety disorder. (*Id.*) The ALJ acknowledged that Plaintiff also alleged disability due to migraine headaches, but he determined the headaches to be a nonsevere impairment based upon his

---

[1]A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

finding that the headaches had "no more than a minimal effect on [Plaintiff's] ability to perform basic work activities." (*Id.* at PAGEID #107).

Considering all of Plaintiff's impairments, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id* at PAGEID #108). He then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no balancing, kneeling, crawling or climbing ladders, ropes or scaffolds; occasional stooping, crouching and climbing ramps and stairs. She should also avoid all exposure to dangerous machinery and unprotected heights. Her work is limited to simple, routine and repetitive tasks; and she should have only occasional interaction with the public and co-workers.

(*Id.* at PAGEID #109).

Relying on the VE's testimony, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy. (*Id.* at PAGEID ##115-16.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at PAGEID #116.)

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed this action for judicial review.

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)), *cert. denied sub. nom. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. TNS, Inc.* 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial  evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to  follow its own regulations and where that error prejudices a claimant on the merits or deprives  the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir.  2007).

## III.  ANALYSIS

In her Statement of Errors, Plaintiff first asserts that the ALJ erred by failing to find her migraine headaches to be a severe impairment.  (ECF No. 11 at PAGEID ##868-70).  Plaintiff also asserts that substantial evidence does not support the RFC the ALJ assessed because it fails sufficiently account for her deficits in concentration and also fails to accommodate her

5

debilitating headaches. (*Id*. at PAGEID ##870-72). The undersigned addresses each of these contentions of error in turn.

A.  **The ALJ's Consideration of Plaintiff's Migraines**

At issue in within this contention of error is whether the ALJ committed reversible error in failing to identify migraines as a severe impairment. According to Plaintiff, her headaches are "severe" as contemplated under the regulations because they "occur on a daily basis, for up to six hours or more" and they "significantly limit her ability to concentrate and stay on task." (Pl.'s Statement of Errors 9, ECF No. 11.) In support of this assertion, Plaintiff points out that she sought treatment with a neurologist, Dr. Bjornstad, and that she followed his recommended treatment but still suffered from severe headaches. She also highlights the log she kept that detailed the frequency and duration of her headaches.

The undersigned finds that the ALJ did not commit reversible error at step two of the sequential evaluation process[2] with respect to his consideration of Plaintiff's alleged migraines.

---

[2]Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id*. at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985).

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "A severe mental impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.'" *Griffith v. Comm'r*, 582 F. App'x 555, 559 (6th Cir. 2014) (quoting 20 C.F.R. § 416.908). Thus, if no signs or laboratory findings substantiate the existence of an impairment, it is appropriate to terminate the disability analysis. *See* SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) ("In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process set out in 20 CFR 404.1520 and 416.920 . . . ."). Significantly, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment." SSR

96-4p, 1996 WL 374187, at *2 (July 2, 1996). "[S]ymptoms" consist of a claimant's description of his or her alleged impairment." 20 C.F.R. § 404.1528(a).

Where, as here, the ALJ determines that a claimant had a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Here, as set forth above, the ALJ found that Plaintiff had several severe impairments, but declined to find her alleged migraine headaches as severe based upon his conclusion that her headaches had "no more than a minimal effect on [Plaintiff's] ability to perform basic work activities." (*Id.* at PAGEID #107.) The ALJ also offered the following discussion relating to Plaintiff's alleged migraines:

> Regarding [Plaintiff's] alleged migraines, [Plaintiff] testified that she experiences daily migraines or 4-5 a week on average that originate at the back of her neck. When this occurs, she has to go lie down for hours in a dark room, due to photosensitivity, and wait until the headache subsides. [Plaintiff] completed a log in which she documented the frequency of her headaches. However, the course of treatment does not support her allegations of disabling headaches on a daily basis.
>
> [Plaintiff] was seen by treating neurologist Bryan Bjornstad, M.D., in August 2013 for evaluation of her headaches. Neurological examination revealed that cranial nerves were intact. Extraocular movements were also intact. There

8

was no sensory loss noted on the face and no facial droop. There were no involuntary movements. Sensation was preserved in the upper and lower extremities. Her gait and coordination were normal and intact. Muscle stretch reflexes were present, symmetric and normal in amplitude in the upper and lower extremities.

Dr. Bjornstad recommended [Plaintiff] undergo CPAP titration, which the evidence shows improved her sleep apnea, which was noted to be a possible cause of her headaches. The record further shows that although [Plaintiff] has continued to complain of headaches, she has remained active (*i.e.*, performing [activities of daily living], socially (attended festival). In addition, this condition appears to be somewhat controlled with medication. The record shows that after Dr. Bjornstad increased the Nortriptyline from 10 milligrams to 100 milligrams at night, [Plaintiff] elected to continue this dosage because of its effectiveness. Thus, I find this condition nonsevere as it causes no more than a minimal effect on [Plaintiff's] ability to do basic work activities.

(ECF No. 10-2 at PAGEID ##107-08 (internal citations to the record and authority omitted).) In addition to this discussion, the ALJ also offered numerous other bases for discounting the credibility of Plaintiff's allegations, including a discussion of her activities of daily living, the inconsistent testimony offered at the hearing, her continued receipt of unemployment benefits, and inconsistencies in her treatment records (including provider observations and objective testing results). The ALJ also accorded "some weight" to the medical opinions of state agency reviewing physicians Dr. Gerald Klyop, M.D., and Dr. William Bolz, M.D., who reviewed the record in January 2014 and March 2014, respectively. Drs. Klyop and Bolz did not identify Plaintiff's migraines as a medically determinable impairment;[3] found that she had only mild impairment in her ability to maintain concentration, persistence, or pace; and concluded that Plaintiff's allegations were not credible. (ECF No. 10-3 at PAGEID ##219-223.) Notably, the

---

[3] Plaintiff's treating physician, Dr. Jeffrey Haggenjos, D.O., likewise did not identify headaches as an impairment that limited Plaintiff's ability to work in either of his opinions. (*See* ECF No. 10-7 at PAGEID ##454-58, 603-05.)

9

ALJ concluded that Plaintiff was *more* limited than Drs. Klyop and Bolz opined based upon her obesity and the objective clinical findings relating to her right knee.

The undersigned concludes that substantial evidence supports the ALJ's determination that Plaintiff's alleged headaches did not constitute a severe impairment. Plaintiff premises this contention of error on her own allegations and self-reports regarding the frequency and severity of her headaches, but as discussed above, the ALJ determined that her allegations and self-reports are not credible. Although Plaintiff has not challenged the ALJ's credibility assessment, the undersigned finds that it is also supported by substantial evidence. As the ALJ and Drs. Klyop and Bolz pointed out, Dr. Bjornstad's examination findings were unremarkable, and he repeatedly observed that Plaintiff was in no distress and was fully alert and oriented with no cognitive impairment. Plaintiff's treatment records also reveal that she reported experiencing "the same type of headaches" in 2010, *while she was still working* and well before her alleged onset date. (ECF No. 10-7 at PAGEID #496.) Upon review of prior imaging studies from 2010, Dr. Bjornstad noted that the results were largely unremarkable, and he did not recommend updated imaging. As the Commissioner points out, despite her allegations of daily, disabling headaches lasting for hours, Plaintiff was noncompliant with prescribed medication and waited much longer between her appointments than Dr. Bjornstad recommended. (*See*, *e.g.*, *id*. at PAGEID ##490-91, 496, 804-08.) And consistent with the ALJ's observations relating to Plaintiff's ADLs, Dr. Bjornstad noted that notwithstanding Plaintiff's allegations of headaches on a daily basis, "[s]he has remained active [and] was able to go to a festival this last Saturday." (*Id*. at PAGEID #804 (June 9, 2014 treatment record).)

In summary, the undersigned concludes that Plaintiff's treatment records, together with the ALJ's other bases for discounting Plaintiff's credibility and the opinions of Drs. Klyop and Bolz, constitute substantial evidence in support of his conclusion that Plaintiff's alleged headaches did not constitute a severe impairment. It is therefore **RECOMMENDED** that the Court **OVERRULE** Plaintiff's first contention of error.

**B.      The ALJ's RFC Assessment**

Plaintiff next argues that the RFC, as determined by the ALJ, fails to account for issues with concentration and being off task caused by her anxiety disorder, obstructive sleep apnea, and chronic headaches. Specifically, according to Plaintiff, her low concentration levels would prohibit her from understanding, remembering, and carrying out the instructions that sedentary work requires. She contends, therefore, that this limitation should have been included in the RFC. (ECF No. 11 at PAGEID #871). The undersigned finds this contention of error to likewise be without merit.

The ALJ is charged with the final responsibility for determining a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). Moreover, the Social Security Act and agency regulations require an ALJ to determine a claimant's residual functional capacity based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI); 20 C.F.R. § 404.1545(a) ("the ALJ . . . is responsible for assessing your residual functional capacity"). As the court recognized in *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222 (N.D. Ohio March 2, 2010), the ALJ is charged with evaluating several factors in determining the residual functional capacity, including the medical

evidence (not limited to medical opinion testimony) and the claimant's testimony. *Id.* at *2 (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); Social Security Ruling 96-5p; Social Security Ruling 96-8p).

An ALJ's residual functional capacity assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant non-medical evidence regarding what work a claimant is capable of performing. Social Security Ruling 96-5p. Social Security Ruling 96-8p instructs that the ALJ's residual functional capacity assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. Social Security Ruling 96-8p.

The applicable regulation, 20 C.F.R. § 404.1527(d)(2), also explains that "[a]lthough we consider opinions from medical sources on issues such as your residual functional capacity, . . . the final responsibility for deciding these issues is reserved to the Commissioner." The regulations do not require an ALJ to rely solely upon medical opinions when formulating a residual functional capacity, but instead explicitly require an ALJ to evaluate medical opinions based on their consistency with and support from "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2), (3), (4). Indeed, as the Sixth Circuit has held, physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994).

Here, the ALJ concluded that Plaintiff has "moderate" limitation in concentration,

persistence, and pace "[b]ased upon the medical evidence in its entirety in conjunction with the hearing testimony." (ECF No. 10-2 at PAGEID #109.) The ALJ found that Plaintiff retained the capacity to perform jobs with "simple, routine and repetitive tasks" and concluded that "she could have only occasional interaction with the public and co-workers." (*Id*.) In reaching this mental RFC, the ALJ discussed, at length, Plaintiff's medical history, her treatment records, the effects of her medication, her significant activities of daily living, the hearing testimony, and the opinion evidence. As discussed above, although the ALJ found Plaintiff's allegations to be not credible, he nevertheless found her to be *more* limited than the state agency reviewing psychologists and physicians opined, all of whom concluded that Plaintiff had only *mild* impairment in maintaining concentration, persistence, and pace. Like all of the state agency reviewing physicians and psychologists, consultative examiner Charles Loomis, M.Ed., also concluded that Plaintiff's "ability to maintain attention and concentration did not appear to be significantly limited" and that she retained the capacity to "perform both simple and multi-step procedures." (ECF No. 10-7 at PAGEID #535.)

In summary, the ALJ's discussion sufficiently explains how the evidence supports the limitations he set forth in Plaintiff's mental RFC. Because the mental RFC is supported by substantial evidence and adequately accounts for all of the limitations the ALJ found to be credible, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

### IV. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of

13

Social Security's decision.

## V. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

*/s/ Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE